UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAMONT S.,

                      Plaintiff,

v.                                                     1:19-CV-1197
                                                             (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC     KENNETH HILLER, ESQ.
  Counsel for Plaintiff                                MARY ELLEN GILL, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                ANNE ZEIGLER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   DENNIS CANNING, ESQ.
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 11.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**      **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1975. (T. 98.) He completed high school. (T. 43.) Generally, Plaintiff's alleged disability consists of central disc herniation, degenerative disc disease, post-traumatic stress disoder ("PTSD"), "shoulder condition," and "explosive anger disorder." (T. 297.) His alleged disability onset date is February 20, 2015. (T. 41.) His date last insured is September 30, 2015. (*Id*.) His past relevant work consists of nurse assistant, cleaner, painter, and construction worker. (T. 89-90.)

### B. Procedural History

On June 24, 2015, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 98.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 11, 2018, Plaintiff appeared before the ALJ, Lynette Gohr. (T. 34-97.) On August 15, 2018, ALJ Gohr issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-33.) On July 9, 2019, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-28.) First, the ALJ found Plaintiff met the insured status requirements through September 30, 2015 and Plaintiff had not engaged in substantial gainful activity since February 20, 2015. (T. 18.) Second, the ALJ found Plaintiff had the severe impairments of: cervical and lumbar spine degenerative disc disease, PTSD,

and major depressive disorder.  (*Id*.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 18-19.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R.§§ 404.1567(b) and 416.967(b); except, Plaintiff:

> can occasional[ly] climb ramps and stairs but never climb ladders, ropes or scaffolds.  [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl.  [Plaintiff] is able to work in a low stress environment defined as including simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routines and processes.  [Plaintiff] can have occasional contact and interaction with coworkers, supervisors and incidental contact with the general public.  [Plaintiff] can have no work in teams or tandem.

(T. 21.)[1]  Fifth, the ALJ determined Plaintiff unable to perform any past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 26-28.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to incorporate all of the consultative examiner's opined limitations in the RFC despite affording the opinion significant weight.  (Dkt. No. 7 at 13-17.)  Second, and lastly, Plaintiff argues the ALJ failed to properly weigh the opinions provided by psychiatric nurse practitioner Obot A. Obot.  (*Id*. at 17-

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

21.)  Plaintiff also filed a reply in which he indicated no reply was deemed necessary. (Dkt. No. 10.)

### B. Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ properly considered the consultative examiner's opinion.  (Dkt. No. 9 at 23-28.) Second, and lastly, Defendant argues the ALJ had good reasons to give little weight to NP Obot's opinions.  (*Id*. at 28-30.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.    Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920[2].  The Supreme Court has recognized the validity of this

---

[2]    On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844.  These final rules were effective as of March 27, 2017.  Some of the new final rules state that they apply only to applications/claims filed before March 27, 2017, or only to applications/claims filed on or after March 27, 2017. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927 (explaining how an adjudicator considers medical opinions for claims filed before March 27, 2017) and 20 C.F.R. §§ 404.1520c, 416.920c (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017; *see also* Notice of Proposed Rulemaking, 81 Fed. Reg. 62560, 62578 (Sept. 9, 2016) (summarizing proposed implementation process).  Plaintiff

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

### A.  Consultative Examiner, Janine Ippolito, Psy.D.

Plaintiff argues, despite affording Dr. Ippolito's opinion "significant weight," the ALJ's RFC determined failed to account for the doctor's opined limitations regarding Plaintiff's ability to deal with stress and interacting with others.  (Dkt. No. 7 at 13-17.)  Plaintiff argues the ALJ failed to explain how her RFC limitation to a "low stress environment" accounted for the doctor's opinion Plaintiff had a moderate to marked limitation in his ability to deal with stress and relate adequately with others.  (*Id*. at 14.)  For the reasons outlined below, the ALJ properly assessed Dr. Ippolito's opinion and substantial evidence in the record supported the ALJ's RFC determination limiting Plaintiff to low stress work with additional social limitations.

In general, "courts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue.  So long as the decision reveals that

---

filed his claim before March 27, 2017 on June 24, 2015.  Therefore, the court reviews the ALJ's decision under the earlier regulations.

the ALJ considered and accounted for stress limitations - even if not in the most explicit terms - remand is not warranted." *Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19-CV-06786, ---F.Supp.3d.---, 2021 WL 243099, at *8 (W.D.N.Y. Jan. 26, 2021) (citing *Gomez v. Comm'r of Soc. Sec.*, No. 18-CV-96, 2020 WL 1322565, at *4 (W.D.N.Y. Mar. 20, 2020)).

Here, the ALJ considered and accounted for Plaintiff's stress and social limitations and further provided sufficient analysis linking the evidence in the record to the ultimate RFC determination. The RFC limited Plaintiff to a low stress environment which the ALJ defined as simple instructions and tasks, no supervisory duties, no independent decision-making, no strict production quotas, and minimal changes in work routines and processes. (T. 21.) The ALJ further limited Plaintiff to occasional contact and interaction with coworkers and supervisors, incidental contact with the general public, and no team or tandem work. (*Id.*)

On August 18, 2015, Dr. Ippolito performed a psychiatric evaluation and provided a medical source statement. (T. 412-416.) Dr. Ippolito opined Plaintiff had no limitations in his ability to: follow and understand simple directions and instructions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; and make appropriate decisions. (T. 415.) She further opined Plaintiff could "relate adequately with others and appropriately deal with stress with moderate to marked limitations." (*Id.*)

The ALJ afforded Dr. Ippolito's opinion "significant weight." (T. 25.) The ALJ acknowledged the doctor only examined Plaintiff once; however, she was an acceptable medical source with program knowledge and a medical specialty in psychology. (*Id.*)

7

She further concluded the doctor's opinion was consistent with treatment records, including source statements from The Butler Clinic, where Plaintiff received mental health treatment. (*Id*.) Lastly, the ALJ concluded the opinion took into consideration Plaintiff's PTSD symptoms and how they impacted his functional abilities, including records showing Plaintiff was able to "engage in interpersonal relationships and visit with friends daily." (*Id*.)

Although Dr. Ippolito found Plaintiff had limitations in relating adequately with others and dealing with stress, the doctor also concluded Plaintiff had no limitations in his abilities to follow and understand simple directions; perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently, and make appropriate decisions. (T. 415.) Dr. Ippolito's findings, that Plaintiff retained the ability to perform simple and even complex work despite limitations in stress and social interactions, supported the ALJ's RFC determination. *See Grega v. Berryhill*, No. 17-CV-6596P, 2019 WL 2610793, at *12 (W.D.N.Y. June 26, 2019), *aff'd sub nom. Grega v. Saul*, 816 F. App'x 580 (2d Cir. 2020) (consultative examiner's opinion found that despite moderate limitations in appropriately dealing with stress, plaintiff was still capable of following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently without supervision, making appropriate decisions, and relating adequately with others); *see Wright v. Berryhill*, 687 F. App'x 45, 48-49 (2d Cir. 2017) (although consultative examiner opined plaintiff had mild to moderate limitations appropriately dealing with stress, he was

nonetheless able to perform simple, routine work and therefore the court could not conclude "a reasonable factfinder would have to conclude" that plaintiff lacked the ability to perform the ALJ's mental RFC) (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d. Cir. 2012)).

Further, in formulating Plaintiff's mental RFC, the ALJ relied on the record as a whole.  In addition to Dr. Ippolito's opinion, the ALJ considered other medical opinion evidence, objective observations, and Plaintiff's testimony.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

The ALJ afforded significant weight to the opinion of the non-examining State agency medical consultant, S. Juriga.  (T. 24.)  Dr. Juriga reviewed the record and opined, in relevant part, Plaintiff's "ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact."  (T. 117.)  Dr. Juriga further opined Plaintiff's "ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary setting."  (*Id*.)  The ALJ's mental RFC determination, limiting Plaintiff to low stress work and additional social limitations, is consistent with the limitations provided by Dr. Juriga.

The ALJ also relied on objective mental status examinations and observations made by providers in formulating her RFC.  (T. 23.)  The ALJ noted mental status examinations findings and psychiatric clinical findings which were "relatively benign."

9

(*Id.*)  Indeed, Plaintiff was repeatedly described as cooperative.  (*See* T. 358, 414, 463, 488, 527, 529.)  Most mental exam findings were essentially normal.  (T. 367, 388, 392, 435, 489, 490, 491-492, 494, 495, 496, 498-499, 501, 509, 514, 516, 527, 590, 592).  The ALJ also considered Plaintiff's testimony regarding his activities.  (T. 22.)  For example, Plaintiff was able to care for his children while his girlfriend was at work, including caring for them when they were infants and preschoolers.  (T. 415, 418.)  Plaintiff reported he stopped working, not due to mental impairments, but because he could not lift more than 50 pounds and had difficulty with prolonged walking and standing.  (T. 483.)  In 2017, he reported he became a certified dog trainer.  (T. 586.)  The objective observations and Plaintiff's activities, together with the opinion evidence in the record, support the ALJ's mental RFC determination.

Overall, the ALJ adequately considered all of the evidence in the record in making his mental RFC determination and the ALJ's decision contains sufficient analysis to support the RFC determination.  Dr. Ippolito's opined limitation of moderate to marked limitations in the ability to deal with stress and interact with others, together with the opinion of Dr. Juriga, objective observations, and Plaintiff's testimony, supported the ALJ's determination.

      **B.**    **Nurse Practitioner Obot**

Plaintiff argues the ALJ erred in weighing the various opinions provided by NP Obot.  (Dkt. No. 7 at 17-22.)  Plaintiff argues the ALJ failed to "fully acknowledge the contents" of NP Obot's four opinions; failed to properly assess the factor of consistency; and improperly concluded objective findings meant Plaintiff could perform full time work without considering decompensation.  (*Id.*)  For the reasons outlined herein, the ALJ

properly assessed NP Obot's opinions and substantial evidence supported her determination.

NP Obot completed four forms concerning Plaintiff's ability to perform various mental functions of work.  (T. 465-467, 535-537, 538-540, 594-595.)  The ALJ afforded "little weight" to NP Obot's "various opinions;" however, in her assessment, the ALJ did not outline each opinion or provide each opinion a specific weight.  (T. 25.)  The ALJ acknowledged NP Obot had a longitudinal treatment history with Plaintiff; however, he was not an acceptable medical source.  (T. 25-26.)  The ALJ further concluded NP Obot's opinions were internally inconsistent in limitations, not consistent with Plaintiff's activities, and not supported by the totality of the evidence reflecting normal mental status findings.  (T. 26.)  The ALJ concluded NP Obot appeared to have given "deference" to Plaintiff's self-reported limitations and symptoms.  (*Id.*)

Here, the ALJ properly assessed the opinions of NP Obot.  Although the ALJ did not summarize each individual opinion, it is clear from the ALJ's decision she considered all of the opinions.  Indeed, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision."  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983)).

In her step two analysis, for example, the ALJ noted NP Obot's May 2018 opinion Plaintiff had an "inability to understand and remember complex, work-related instructions and carry out detailed work requirements."  (T. 20, 595.)  In assessing NP

Obot's opinions, the ALJ noted she provided "various opinions" containing "varying degrees of limitations" and cited each opinion in the record. (T. 25.)

The ALJ properly considered NP Obot's status as a non-acceptable medical source as a factor in her overall assessment of his opinions. *Suttles v. Berryhill,* 756 F. App'x 77, 77-78 (2d Cir. 2019) (ALJ properly accorded little weight to opinion of nurse practitioner opinions because she was not an acceptable medical source and her opinions were inconsistent with medical records). There are five categories of "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse practitioners are not included within those categories. Nurse practitioners are listed among the "other medical sources," whose opinion may be considered as to the severity of a plaintiff's impairment and ability to work, but their conclusions are not entitled to any special weight. *Id*. §§ 404.1513(d)(1), 416.913(d)(1).

The ALJ also properly considered the consistency and supportability of NP Obot's limitations with the evidence in the record. *Suttles*, 756 F. App'x at 78. The ALJ concluded the limitations were inconsistent with normal mental status findings throughout the record. (T. 26); *see DePriest v. Comm'r of Soc. Sec.*, 448 F. Supp. 3d 279, 284 (W.D.N.Y. 2020) ("An ALJ need not give controlling weight to a treating physician's opinion where it is inconsistent with his own treatment notes."); *see also Pawlak v. Saul*, No. 19-CV-165-MJR, 2020 WL 3046204, at *6 (W.D.N.Y. June 8, 2020) (collecting cases) (although the findings from Plaintiff's mental or psychiatric examinations supported some limitations, they did not support disabling restrictions). In addition, the limitations provided on the forms were inconsistent with the findings and

opinions of Dr. Ippolito, who was an acceptable medical source and had examined Plaintiff.  (T. 26, 412-416.)

Although Plaintiff argues the ALJ improperly concluded benign findings on examinations and activities of daily living meant Plaintiff could perform full time work, Plaintiff misreads the ALJ's decision.  (Dkt. No. 7 at 20.)  The ALJ did not conclude Plaintiff's activities and findings on examination equated to the ability to perform full time work, the ALJ properly concluded such evidence did not support the limitations provided by NP Obot.  (T. 26); *see Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (ALJ properly afforded treating source less than controlling weight based on the record which contained "notes showing [plaintiff's] improved mood and her ability to independently manage reported activities of daily life, including tasks such as cooking, cleaning, self-care, banking, shopping and driving without assistance.").

Overall, the ALJ's stress and social limitations included in the RFC were supported by substantial evidence in the record including the Dr. Ippolito's opinion and other medical and non-medical evidence.  Further, the ALJ properly assessed the opinions provided by NP Obot.  Although the ALJ did not specifically outline and weigh each individual opinion, the ALJ provided good reasons for affording the opinions of the non-acceptable medical source little weight.

The ALJ has the duty to evaluate conflicts in the evidence.  *See* 20 C.F.R. §§ 404.1567(c)(i), 416.927(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).  Plaintiff may disagree with the ALJ's conclusion; however, the Court must "defer to the Commissioner's

resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 29 (2d Cir. 2018) (internal citations and quotations omitted).  As the Supreme Court stated, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:     March 4, 2021

_____
William B. Mitchell Carter
U.S. Magistrate Judge